UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>  vs.<br><br>DUANE HOSEK,<br><br>                Defendant. | CR. 16-50111-JLV<br><br>ORDER |

## INTRODUCTION

Defendant Duane Hosek, appearing *pro se*, filed a motion for compassionate release. (Docket 86). Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Hosek's motion. (Dockets 88, 91-93, 93-1 through 93-3 and 95-97). For the reasons stated below, defendant's motion is granted.

## STANDING ORDER 20-06

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). Under

---

[1]See https://www.sdd.uscourts.gov/so2006 ("SO 20-06").

the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. ¶ 1. The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already. These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, "within two business days of filing all motions for compassionate release[,]" the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. at p. 2 ¶ 4. Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

    c.    Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

    d.    Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id. The standing order contains provisions for sharing of critical information between the FPD, the U.S. Attorney, the Probation Office and the court. Id. ¶ 5. The priority of briefing is set according to the different categories of assignment of a defendant.[2] Id. ¶¶ 6-8.

## FACTUAL BACKGROUND

On March 9, 2018, Defendant Duane Hosek was sentenced to a term of 60 months in the custody of the Bureau of Prisons ("BOP") for his conviction for attempted receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1). (Docket 82). This sentence was the statutory minimum term of imprisonment mandated by 18 U.S.C. § 2252A(b)(1). But for this mandatory minimum sentence, according to Mr. Hosek's presentence report ("PSR") "[b]ased on a total offense level of 19 and a criminal history category of I, the guideline imprisonment range [would have been] 30 months to 37 months." PSR ¶ 42.

Mr. Hosek is currently an inmate at the Federal Medical Center in Rochester, Minnesota. (Docket 86 at p. 1). Mr. Hosek has a scheduled release date of June 8, 2022. (Dockets 93 at p. 1 & 96 at p. 1) (referencing https://www.bop.gov/inmateloc/ (Register Number 16590-273); see also Docket 91 at p. 48). Mr. Hosek has served 55.2 percent of his sentence and his

---

[2]SO 20-06 was amended on October 21, 2020, after this case was ripe for resolution. See https://www.sdd.uscourts.gov/socraa. The amendments have no impact on the court's analysis of this case.

home detention eligibility date is December 9, 2021.  (Docket 91 at p. 48).  Mr. Hosek is 65 years old.  Id.

Mr. Hosek's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his personal health during the COVID-19 pandemic.  (Docket 86).  Mr. Hosek suffers from:

- Unspecified mood [affective] disorder.  (Docket 91 at p. 29);
- Vitamin D deficiency.  Id.;
- [C]hronic pain in both hips.  Id.;
- Kidney stones.  Id. at p. 5; and
- Insomnia.  Id. at p. 3.

For his affective disorder, Mr. Hosek is prescribed Trazodone daily.  Id. at p. 5.  The clinical reports note he is compliant with taking his medication.  Id. at p. 3.  During a March 19, 2020, clinical visit, Mr. Hosek's chart noted he had a "[p]roductive, cough-[p]roductive of thick green or brown mucus.  Cough, lasting greater than one week. . . . Shortness of breath."  Id. at p. 4.  On two different occasions in 2018, his chart reflected a recurring "[a]cute upper respiratory infection[.]"  Id. at p. 29.

Mr. Hosek's *pro se* filing represents that his mother "passed away eight months ago," and "died of an auto-immune deficiency which . . . directly affects your immune system."  (Docket 86 at p. 1).  He further represents that his father "passed away in 2013. . . due to heart disease."  Id.  His sister, Cheryl, is a survivor of thyroid and ovarian cancer and his older brother is a prostate cancer survivor with hypertension.  Id.

4

Addressing the 18 U.S.C. § 3553(a) factors, Mr. Hosek contends that while "released on a personal recognizance bond for almost a year before pleading guilty in his case [he] . . . complied with all conditions of his release." (Docket 93 at p. 15) (referencing PSR ¶ 4).  "Prior to this offense," Mr. Hosek points out he "had no juvenile convictions, no adult convictions, and no arrests." Id. at p. 14 (referencing PSR ¶¶ 23-26).  "While in BOP custody," Mr. Hosek submits

> he has returned to the productive, well-behaved, and well-intentioned person he has been for most all of his 65 years.  He has not had any disciplinary violations. . . . Further, he has good work reports on his orderly work detail and has a good rapport with other inmates and staff. . . . He has been enrolled in fourteen educational courses and assigned two different work details.

Id. at p. 15 (referencing Dockets 86 at p. 5 & 91 at pp. 51-53).  Mr. Hosek argues "[i]f his sentence were reduced he has a long track record demonstrating that he would be an asset to the community as opposed to a danger."  Id.   He contends "[n]early every document or piece of paper generated, accumulated, or reviewed in connection with [his] case demonstrates his offense conduct was the aberration in his life." Id. at p. 16.  Mr. Hosek represents that if released from custody he would "live with his sister, Cheryl Hosek, in Winner, South Dakota."  Id.

In conclusion, Mr. Hosek submits "his sentence was not intended to 'include incurring a great and unforeseen risk of severe illness or death.' " Id. at p. 17 (citing United States v. Rodriguez, 451 F. Supp. 3d 392, 407 (E.D. Pa. 2020)).

5

## MR. HOSEK'S CLASSIFICATION

On May 8, 2020, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion. (Docket 88). They jointly "agree [Mr. Hosek's] case should be categorized as a Low Priority case." Id.

## ANALYSIS

The government opposes Mr. Hosek's motion for compassionate release. (Docket 96). The government argues Mr. Hosek "has failed to show his age and health conditions, or the effect of COVID-19 on him, specifically, constitute 'extraordinary and compelling reasons' warranting his immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A)." Id. at p. 9. After consulting the Centers for Disease Control and Prevention ("CDC") guidelines, the government submits Mr. Hosek's age should not be a deciding factor because "[t]he greatest risk for severe illness from COVID-19 is among those aged 85 or older." Id. (referencing https://www.cdc.gov/coronavirus/2019-ncov/need-extra--precautions/older-adults.html).

The government opposes Mr. Hosek's claim that "he has a family history of diabetes, autoimmune disorders, and heart disease." Id. at p. 13 (referencing Docket 93 at p. 12). The government contends "these conditions should not be considered[, as] [t]here is no corroboration of these claims, nor has the Defendant himself been diagnosed with any of those conditions." Id. In the government's view, Mr. Hosek's medical conditions are a non-issue, because his "medical records show that the Defendant's medical conditions are stable, non-severe, and under control." Id.

Because at the time the government filed its brief there were no confirmed active cases of COVID-19 in FMC Rochester, the government submits

> [Mr. Hosek] has provided no information to suggest that FMC Rochester, where he is housed . . . is failing to take significant measures to protect the safety of the inmates and its employees. In sum, the Defendant has not established extraordinary or compelling reasons for release because BOP is making continued efforts to work to contain the virus.

Id. at p. 18.  In fairness to the government, the situation at FMC Rochester changed significantly, as the court will explain later in this order.

Addressing the § 3553(a) factors, the government argues Mr. Hosek "would pose a danger to public safety if released." Id. at p. 20.  The government then proceeds to detail the defendant's conduct underlying the conviction.  Id. at pp. 20-22.  The government submits "[t]he § 3553(a) factors strongly disfavor a sentence reduction. . . . The nature of the crime does not warrant an additional reduction.  Such a reduction would not be a deterrent and would be a disparity in sentencing as to other similarly situated individuals." Id. at p. 22.

In reply, Mr. Hosek argues:

> [He] is not presently a danger, and reliance upon an offense from 2016 is not an accurate reflection of his dangerousness or lack thereof, now.  The reality is that but for the mandatory minimum for his offense [he] would have had an advisory guideline range of 30 to 37 months and . . . would have already completely served his time in full. . . . Mr. Hosek is 65 years old, has been in custody since 2017 and has not had any disciplinary violations. . . . He has taken advantage of educational programming and employment while in custody.

7

(Docket 97 at p. 6) (internal references omitted).  Mr. Hosek points out he "had no pretrial issues while he was out on bond living with his sister Cheryl Hosek in Winner, South Dakota, which is the exact same person and location he proposes for any period of home confinement." Id.

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court finds Mr. Hosek exhausted the administrative relief provision contemplated by § 3582(c)(1)(A).  He submitted a request for release on April 8, 2020, to the prison's authorities.  (Docket 86 at p. 2).  The government acknowledges that on June 9, 2020, the warden denied Mr. Hosek's compassionate release request.  (Docket 96 at p. 2).  The government's brief does not challenge or address administrative exhaustion.  Id., *passim*.  The court finds pursuant to § 3582(c) that it is free to consider Mr. Hosek's motion for compassionate relief on its merits.

8

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, No. 20-6821, 2020 WL 7050097, at *3 (4th Cir. Dec. 2, 2020).  That task was left to the United States Sentencing Commission.  "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).  Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling.  U.S.S.G. § 1B1.13 cmt. n.1.  The four categories have not been updated since December 2018 when the First Step Act became law.[3]

The United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits have addressed the court's authority under the First Step

---

[3]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two shy of the four it needs to amend the [U.S.S.G.]." United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

Act.[4]  See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); United States v. McCoy, 2020 WL 7050097; United States v. Jones, No. 20-3701, 2020 WL 6817488 (6th Cir. Nov. 20, 2020); and United States v. Gunn, Case No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020).

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)."  Brooker, 976 F.3d at 234.  The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances."  Id.  The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable."  Id. at 235.  "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."  Id. at 237; see also Gunn, 2020 WL 6813995, at *2 (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion"); Jones, 2020 WL 6817488, at *9 ("In cases where incarcerated persons file motions for compassionate release,

---

[4]The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue but declined to do so.  United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

10

federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); McCoy, 2020 WL 7050097, at *8 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction.").

The court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." Brooker, 976 F.3d at 237. See also McCoy, 2020 WL 7050097, at *9 (same); Jones, 2020 WL 6817488, at *9 (same); Gunn, 2020 WL 6813995, at *2 (same). The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Mr. Hosek turned 65 after his initial motion was filed. At age 65 he would be categorized as an Intermediate Priority case. See Amended Standing Order 20-06 ¶ 4; https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited December 11, 2020) (listing individuals aged 65 or older).

According to the CDC, an individual's risk for severe illness from COVID-19 increases as they get older. "For example, people in their 50s are at higher

11

risk for severe illness than people in their 40s.  Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s."  Id.  "Severe illness means that the person with COVID-19 may require hospitalization, intensive care, or a ventilator to help them breathe, or they may even die."  Id.

Individuals in the 65-75 age group have a five times higher risk of hospitalization and a 90 times higher risk of death when compared to the 18-29 age group.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited December 11, 2020).  "In fact, 8 out of 10 COVID-19 related deaths reported in the United States have been among adults aged 65 years and older."  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited November 3, 2020).

Rochester FMC currently has three COVID-19 positive inmates and one positive staff member.  https://www.bop.gov/coronavirus/ (last visited December 11, 2020).  With a population of 619 inmates, Rochester has had 102 inmates and 29 staff members recover.  Id.  All of Rochester FMC's positive COVID-19 cases occurred since late-July 2020.  See United States v. King, 15-cr-50050, Docket 60 at p. 6 (D.S.D. 2015).  Since that date through October 15, 2020, Rochester FMC COVID-19 cases ballooned to 43 positive inmates.  Id., Docket 63 at p. 15.  "[T]o say the least, prisons are ill-suited for social distancing and incarcerated persons generally face a substantial risk of contracting the virus."  United States v. Pitt, Crim. No. 1:97-CR-108-01, 2020

WL 4677251, at *2 (M.D. Pa. Aug. 12, 2020) (referencing United States v. Somerville, 463 F. Supp. 3d 585 (W.D. Pa. 2020) ("Even under normal circumstances, '[p]risons are tinderboxes for infectious disease.' ") (citing Rodriguez, 451 F. Supp. 3d 392).

The court has no reason to doubt the summary of Mr. Hosek's parents' medical issues and causes of death or his siblings' complex medical histories. See Docket 86 at pp. 1-2. At age 65 with a family history of immuno-compromised issues, including several different forms of cancer and heart disease, Mr. Hosek is among the individuals the CDC deems to be at a higher risk of developing serious complications or death if he were to contract COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Mr. Hosek's mandatory minimum sentence was not intended to be a death sentence. Rodriguez, 451 F. Supp. 3d at 407.

Against these findings, the court must consider if compassionate release comports with the § 3553(a) factors. In Mr. Hosek's case, the "nature and circumstances of the offense"—attempted receipt of child pornography—is serious. 18 U.S.C. § 3553(a)(1). "[T]he history and characteristics of the defendant," requires the court to consider the defendant as a whole person. Koon v. United States, 518 U.S. 81, 113 (1996). Other than the current offense, Mr. Hosek has no criminal history. See PRS ¶¶ 23-24. His total criminal history score for purposes of the U.S.S.G. calculations was "0." Id. ¶ 25.

The court finds Mr. Hosek has conducted himself in a positive manner while in BOP custody.  He has served 55.2 percent of his 60-month sentence without any disciplinary write-ups and has been an active participant in BOP programing.  (Docket 86 at pp. 4-10).  He is considered a low security risk.  Id. at p. 10.  Based on this information as well as a review of Mr. Hosek's PSR and recalling the 2018 sentencing hearing, the court believes Mr. Hosek is a low to no risk of reoffending in either the offense of conviction or any other offense for that matter.

Contrary to the government's argument, the court was not permitted to consider the § 3553(a) factors for a sentence below the mandatory minimum sentence.  In the court's view a downward variance from the Sentencing Guidelines, without consideration of the mandatory minimum sentence, would have "reflect[ed] the seriousness of the offense, . . . promote[d] respect for the law, and . . . provide[d] just punishment for the offense . . . [and would have] afford[ed] adequate deterrence to [future] criminal conduct" by the defendant. 18 U.S.C. §§ 3553(a)(2)(A) & (B).  Considering the length of the defendant's time in prison and his behavior while incarcerated, as well as the supervised release special conditions imposed at sentencing, additional incarceration is not necessary "to protect the public from further crimes of the defendant."  Id. § 3553(a)(2)(C).  Mr. Hosek's obligation to comply with the terms of supervised release would best "provide the defendant with . . . correctional treatment in the most effective manner."  Id. § 3553(a)(2)(D).

Incarceration is not the only "kind[] of sentence[] available." Id. § 3553(a)(3).  A noncustodial sentence will limit Mr. Hosek's liberty interests through supervised release and he will face harsh consequences if he violates the special conditions activated upon his release from BOP custody.  United States v. Gall, 374 F. Supp. 2d 758, 763 (S.D. Iowa 2005), *rev'd*, 446 F.3d 884 (8th Cir. 2006), *rev'd*, 552 U.S. 38 (2007).  Those special conditions promote respect for the law, protect the public and do not constitute approval of Mr. Hosek's criminal conduct.  Id.

At this juncture, use of the First Step Act will not create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Id. § 3553(a)(6).  The court finds Mr. Hosek will not pose a danger to the public and compassionate release is appropriate.

The court finds Mr. Hosek met his burden of proof and presented "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).  The court retains the authority to reduce Mr. Hosek's sentence to time served.  Following his release from custody, Mr. Hosek will remain on supervised release for five years, subject to the mandatory and standard conditions and the special conditions of supervised release imposed in the original sentence.  (Docket 82 at pp. 4-5).

## ORDER

Good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 86) is granted.

IT IS FURTHER ORDERD that the defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that upon his release, Mr. Hosek shall reside at the home of his sister, Cheryl Hosek, in Winner, South Dakota.

IT IS FURTHER ORDERED that within 72 hours of release from the custody of the BOP Mr. Hosek must report, by telephone, 605-945-4641 or 800-347-0532, to the United States Probation and Pretrial Services Office for the District of South Dakota at 225 South Pierre Street, Room 318, Pierre, South Dakota, 57501.

IT IS FURTHER ORDERED that Mr. Hosek shall remain on supervised release for five years, subject to the mandatory and standard conditions of supervision and the special conditions of supervision imposed in the sentence of March 9, 2019.  (Docket 82 at pp. 4-5).

IT IS FURTHER ORDERED that the United States Probation Office shall prepare an amended judgment consistent with this order.

IT IS FURTHER ORDERED that the Clerk of Court shall deliver a copy of this order to the United States Probation Office and the United States Marshals Service.

Dated December 11, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE